STATE, EX REL. BOARD OF CHOSEN FREEHOLDERS OF THE COUNTY OF OCEAN, v. THOMAS C. VANARSDALE, JOB H. FALKINBURGH, AND JAMES DEY, TOWNSHIP COMMITTEE OF THE TOWNSHIP OF LACEY, IN SAID COUNTY, AND JOSEPH HOLMES, THEIR TREASURER.

1. The conclusion arrived at by the board of assessors, as certified by the abstract of ratables, is an adjudication which cannot be controverted collaterally.
2. *Mandamus* will not lie to a township committee and their treasurer, because they have not the power to do what the *mandamus* applied for would direct.
3. The statute directing the payment of state and county taxes out of the first moneys collected, construed not to compel payment out of moneys assessed in subsequent years, for special purposes.

On rule to show cause why a *mandamus* should not issue.

Argued at June Term, 1880, before Justices DIXON, REED and PARKER. .

For the relators, *Cortlandt & R. Wayne Parker.*

For the respondents, *I. W. Carmichael* and *J. D. Bedle.*

The opinion of the court was delivered by

PARKER, J. In the term of February last, a rule was entered ordering the township committee of the township of Lacey and their treasurer forthwith to pay to the collector of the county of Ocean the balance claimed to be due said county from said township, on the quotas of state and county tax for the years 1874, 1876 and 1877, respectively, or, in default thereof, to show cause why a *mandamus* should not issue commanding them to make such payment.

Payment not having been made, the relators have applied for the *mandamus*.

Freeholders of Ocean v. Township of Lacey.

The balance claimed to be due in 1874, is the sum of $347.57 ; in 1876, the sum of $1706.80, and in 1877, the sum of $516.92, with interest on each of said amounts from the time when the taxes should have been paid to the county collector.

That the sum claimed on the duplicate of 1874 is due from the township to the county, and unpaid, is not denied.

The controversy is in reference to the quotas of 1876 and 1877. It is contended by the respondents that the state and county taxes of those years for which the township of Lacey was legally responsible, have been paid in full to the county collector.

The abstracts of ratables of the years 1876 and 1877, signed and sworn to by the members of the board of assessors, offered in evidence, prove the quotas of the state and county taxes. The assessors of the township for the years in question had notice of the quotas fixed by the board of assessors.

It appears by the testimony that only a part of the quotas of the township of Lacey, as fixed by those abstracts of ratables, has been paid, and if the abstracts be taken as the basis by which to fix the amounts, the balances due the county for the several years named, are as claimed by the relators.

But it is contended that the township is not concluded by the abstract of ratables. It is said that the assessor of the township, in 1876, submitted the duplicate he had prepared to the board of assessors of that year, at their annual meeting; that the board increased the quota of the township, and that the same thing was done in 1877, but that the proceedings of the board, in increasing the quotas, were irregular and illegal, and therefore not binding on the township. The assessor of the township, in each of these years, after notice, disregarded the quotas fixed by the board of assessors, and delivered the duplicates to the township collector, as originally made out. Consequently, the sum added by the board of assessors was not raised for the county, and hence this litigation.

It is not denied that the board of assessors had jurisdiction of the subject matter on which they acted.

Upon motion for *mandamus*, the legality of the proceedings of the board, by which the conclusion as to quotas was arrived at, cannot be called in question.

The board of assessors is invested with the power of hearing and determining as to values and of fixing quotas. Its duty is to estimate the property contained in the duplicates of the several assessors, at such valuation as the board shall think reasonable and just, and thereby fix the quota of the tax to be levied and collected in each township, in proportion to such value; and if it appear to the board that the valuation of the property, in the duplicate of any assessor, is relatively less than the value of other property in the county, it may be increased. The final determination of the body invested with these powers is made known by the abstract of ratables which they sign. The abstract shows an adjudication, and the proceedings by which it is arrived at cannot be inquired into on this application. An adjudication by a tribunal having competent jurisdiction, remaining unreversed, cannot be attacked collaterally. See notes in *Duchess of Kingston's Case*, 2 *Smith's Lead. Cas.* 436; *Broom's Leg. Max.* 243; *Town of Belvidere* v. *Warren R. R. Co.*, 5 *Vroom* 194.

The abstracts of ratables must therefore be considered as fixing the amounts of the quotas of the state and county taxes, which the township of Lacey should pay the county of Ocean. A certain sum is thereby determined to be due from the township to the county, and a *mandamus* will lie to compel payment, if sought against the proper parties.

But can a *mandamus* issue against the township committee and their treasurer, as applied for in this case? Have the township committee and their treasurer, or either of them, the power to do what the writ would require to be done?

The township committee cannot order an assessment to raise money to pay this claim, and certainly their treasurer would be powerless in the premises. The evidence shows

that there is no money in the treasury of the township. Therefore, this indebtedness, when liquidated, must be paid from moneys raised by the township taxes in years subsequent to the time when the obligation was incurred.

The relators insist that if a *mandamus* cannot go to the township committee, it may issue to Mr. Holmes, whom the application terms the treasurer of the committee. The proof is, that the committee never had a treasurer, and that Mr. Holmes was and is township collector.

Suppose this be considered a misapplication of terms, and the application be taken as for a *mandamus* against the township collector—still, it cannot go to him. The collector has never been in fault. He could not collect and pay over, except in accordance with the duplicates delivered to him by the assessor. Nor has the township collector any power to do what the *mandamus* would order done. He has no funds of the township in his hands, and if he had, could he be required to pay them in a direction other than that for which they were raised?

"The Inhabitants of the Township of Lacey" not being a party to the proceedings, the collector not in default, and not having in his hands any moneys specifically appropriated to pay this debt of the township, payment by him cannot be enforced by *mandamus*.

The section of the statute which directs that the state and county taxes shall be paid out of the first moneys collected, must be construed as applying to the first moneys received in the year when the state and county taxes to be paid become due. It does not mean that the first moneys received this year, raised for special purposes, shall be taken to pay the state and county taxes of former years.

Even if a *mandamus* could legally be issued to the township collector in this case, directing him to pay the county this indebtedness out of moneys which may hereafter come to his hands from assessments made for other purposes, such as for roads and the poor, the court, in its discretion, should not

grant it, so long as there are other lawful modes of attaining the desired object.

Because of the assessor's obstinacy, the people of the township should not be embarrassed to such an extent as to stop, or even materially interfere with the public business, to conserve which, the township has a corporate existence.

The *mandamus* to the parties named in the rule to show cause, is refused, but without costs.